UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **DANNY PROCTOR,**<br><br>                   **Plaintiff,**<br><br>v.<br><br>**LIFE INSURANCE COMPANY<br>of NORTH AMERICA,**<br><br>                   **Defendant.** | Civil Action No.  3:18-cv-340-RGJ |

## COMPLAINT

### Introduction

1. This complaint seeks legal and equitable damages arising from and relating to disability benefits provided by an insurance policy underwritten and issued by Defendant.

2. The headings contained in this complaint are intended only to assist in reviewing the statements and allegations contained herein.  To avoid the unnecessary repetition in each section, Plaintiff hereby affirms and incorporates each paragraph in each section of this complaint as though fully set forth therein.

3. The factual allegations found in this complaint are not exhaustive, and are presented throughout this complaint so as to provide the requisite notice of the basis for Plaintiff's allegations.

### Jurisdiction & Venue

4. This Court has subject matter jurisdiction over the claims asserted in this action for monetary and equitable relief under Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and § 1132(f).

5. Venue is appropriate in the United States District Court for the Western District

of Kentucky pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

## Parties

6. Plaintiff Danny Proctor ("Mr. Proctor") is a citizen of the United States and an insured participant under the disability insurance coverage at issue in this lawsuit.

7. Defendant Life Insurance Company of North America ("LINA") is the underwriter and insurer for the disability insurance policies at issue in this lawsuit. At all relevant times, LINA was doing business within the Commonwealth of Kentucky and may be found in this district.

## Facts

8. Mr. Proctor is insured under a group long term disability insurance policy ("LTD Policy") underwritten and issued by LINA.

9. In the event of disability, the LTD Policy provides a monthly disability benefit equal to 66-2/3% of his pre-disability earnings.fs

10. For the first 12 months of disability, the LTD Policy provides monthly disability benefits if the insured – Mr. Proctor – is unable to perform the material duties of his regular occupation – "own occupation".

11. After 12 months, the LTD Policy provides monthly disability benefits if the insured – again, Mr. Proctor – is unable to perform the material duties of "any occupation" for which he is qualified and unable to earn at least 80% of his indexed pre-disability earnings.

12. In November 2011, because of a work-related injury which prevented him from engaging in full-time gainful employment, Mr. Proctor ceased working in his own occupation and subsequently applied for the disability benefits – including the LTD Policy benefits. Since November 2011, Mr. Proctor has remained continuously disabled and unable to function on a full-time basis in any gainful sedentary, or greater, level employment.

13. LINA approved Mr. Proctor's claim for "own occupation" disability for the 12-month maximum duration – until May 2013. Thereafter, LINA approved Mr. Proctor's claim for "any occupation" disability benefits.

14. LINA continued Mr. Proctor's "any occupation" disability benefits for the next four-and-a-half (4-1/2) years, until abruptly terminating his disability benefits in August 2017.

15. LINA terminated Mr. Proctor's disability benefits despite there being no improvement in his functional limitations, let alone any resolution of his chronic debilitating medical issues.

16. LINA further disregarded the findings from its own examining health professional – KORT – who performed a lengthy and detailed functional capacity assessment ("FCE") of Mr. Proctor's current abilities.

17. After a three-hour plus testing assessment, KORT concluded that Mr. Proctor was functionally limited to sitting only occasionally (up to 1/3rd of an 8-hour workday) – less than sedentary requirements and consistent with the prior 4-1/2 years of his disability.

18. LINA reviewed the KORT examination findings and noted that Mr. Proctor "demonstrated consistent performance" during the FCE and that "the results of this evaluation can be considered to be an accurate representation of Danny Proctor's functional abilities."

19. Despite the KORT examination findings, LINA terminated Mr. Proctor's disability benefits. The termination letter stated that "the findings of the FCE were not consistent with the totality of the other clinical records," but did not identify or explain the alleged inconsistencies.

20. Contrary to the Regulatory Settlement Agreement, and the P&P disability claims manual, LINA disregarded the FCE and instead relied on non-examining record reviews from doctors known to favor LINA termination decisions.

21. LINA's arbitrary termination of Mr. Proctor's benefits was again based on its financial interests, as opposed to the supporting medical evidence.

22. Mr. Proctor exhausted his administrative remedies under the LTD Policy.

23. The LTD Policy does not contain discretionary language. In *Barbu v. Life Insurance Company of N. America*, Civil Action No. 12-cv-1629, LINA admitted the LTD Policy does not contain discretionary language. LINA stated it "admits that the Policy contains

no explicit grant of discretionary authority." LINA further stated, "LINA does not dispute that the Policy does not contain a grant of discretionary authority."

24. At all times relative hereto, LINA was operating under an inherent and structural conflict of interest because any disability benefits provided to Mr. Proctor are paid from LINA's assets.

25. LINA's corporate culture pressures claims personnel to deny claims in order to reduce the amount of monthly benefits paid. Employees who save LINA money by terminating or denying claims are more likely to be rewarded with bonuses, promotions, and favorable employment reviews as compared with those who do not. By way of example, LINA employees are subject to production metrics that are based on claim closure (return to work).

26. LINA's claims process is inherently flawed and biased, resulting in participants – Mr. Proctor – being denied a full-and-fair review. By way of example, and not an exhaustive list:

    a. LINA denies disability claims based on its statistical data that participants will *not* file an appeal, thereby avoiding any future liability;

    b. Because LINA knows participants statistically will *not* appeal, LINA limits the resources it expends as part of its claim review and denial decision (e.g. not obtaining any medical or functional capacity examination, and not obtaining any surveillance);

    c. Based on its knowledge that an appeal is *not* likely, LINA's denial letters are intentionally sparse and fail to comply with both the policy terms and the Department of Labor ("DOL") claim regulations (e.g. not providing an explanation for the denial (no discussion), not identifying the specific information required);

    d. LINA fails to comply with the LTD Policy terms limiting it to an actual examination of the insured when it questions or disputes the participant's medical evidence; and

4

      e.    LINA does not ensure its disability claims personnel comply with the DOL claim regulations.

27.    Mr. Proctor's complaint is timely and not otherwise time barred.

## Claims

28.    The long-term disability insurance policy is a written contract.

29.    LINA breached the terms of the contract. By way of example, and not an exhaustive list: LINA failed to provide the respective LTD Policy benefits; ignored relevant medical evidence; failed to provide a full-and-fair review; and failed to comply with the policy terms.

30.    LINA's contractual breaches have resulted in damage to Mr. Proctor, not only in the loss of his monthly disability benefits, but also in his loss of earnings on the unpaid benefits, his lost opportunity costs, and his attorneys' fees and costs – all incurred as a direct result of LINA's improper actions.

31.    LINA has similarly failed to comply with the DOL claim regulations, as well as statutory requirements, that it provide a full-and-fair claims process.

32.    29 U.S.C. §§1132(a) is the enforcement mechanism permitting Mr. Proctor to enforce the contractual terms of the LTD Policy, to obtain past benefits and reinstatement of ongoing benefits, to obtain declaratory relief, and to obtain other appropriate equitable relief including, but not limited to, surcharge, make-whole relief, and disgorgement.

## Attorneys' Fees & Costs

33.    As a result of LINA's improper conduct, Mr. Proctor has incurred attorneys' fees and costs.

34.    29 U.S.C. §1132(g) is the enforcement mechanism permitting Mr. Proctor to recover his attorneys' fees and costs.

## Prayer for Relief

35.    Mr. Proctor requests the Court enter judgment in his favor and against LINA on all claims asserted herein.

36. Mr. Proctor requests the Court award his reasonable attorneys' fees and costs.

37. Mr. Proctor requests the Court award pre- and post-judgment interest at the greater of his actual borrowing rate or the rate earned by LINA on his unpaid monthly disability benefits.

38. Mr. Proctor requests the Court award all other legal or equitable relief to which he may be entitled.

39. Mr. Proctor requests leave to amend the complaint as needed.

* * * * * * * *

Dated: May 30, 2018

Respectfully submitted,

s/ Andrew M. Grabhorn
Michael D. Grabhorn
*m.grabhorn@grabhornlaw.com*
Andrew M. Grabhorn
*a.grabhorn@grabhornlaw.com*
Grabhorn Law | Insured Rights™
2525 Nelson Miller Parkway, Suite 107
Louisville, KY  40223
p: (502) 244-9331
f: (502) 244-9334

*Counsel for Plaintiff Danny Proctor*